**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA M. MAGNI,** | : | **3:15-CV-1177** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **vs.** | : | |
| | : | |
| **TIMES SHAMROCK** | : | **(Magistrate Judge Carlson)** |
| **COMMUNICATIONS, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

This is an action brought Donna Magni, the former Deputy Chief of the Luzerne County's Budget and Finance Department, against media companies and their owners, Luzerne County, and individual Luzerne County officials.  In her complaint, Magni alleges that the defendants defamed her and retaliated against her in connection with wrongfully terminating her employment with the County, allegedly for issuing more than 1,600 erroneous Internal Revenue Service (IRS) W-2 forms to County employees.  According to Luzerne County, Magni was terminated for this mistake.  Magni, however, maintains that this error – for which she disclaims responsibility -- was merely pretext for the real reason for her firing, namely, that she had spoken out on matters of public concern regarding the County's financial distress.  She has brought claims for First Amendment

retaliation, due process violations, and claims for defamation and wrongful discharge under Pennsylvania state law.

The media defendants have answered the plaintiff's allegations, but the Luzerne County defendants have moved to dismiss all of the claims brought against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the plaintiff's complaint fails to state any claim for which relief may be granted.  The motion has been briefed and referred to the undersigned for purposes of preparing a report and recommendation.  For the reasons that follow, it will be recommended that the motion be granted in part and denied in part.

## II.   __BACKGROUND__

The background to this report is taken from the plaintiff's most recent amended complaint (Doc. 37.), and the facts alleged therein are accepted as true for purposes of preparing this report and recommendation only.  The plaintiff includes a number of allegations against The Scranton Times and its affiliates and officers, but the majority of the background will focus on the plaintiff's factual allegations as they relate to her employer, Luzerne County, and the two county officials who have been named as defendants, Robert C. Lawton and Brian Swetz.

From March 7, 2011, until January 31, 2014, Donna Magni served as the Deputy Chief of Budget and Finance for Luzerne County, including a period during which she served as Interim Director of Budget and Financial Services from

September 10, 2013, to December 10, 2013.  (Doc. 37, Compl., ¶ 9.)  During the time of her employment with the County, Magni "dutifully and capably performed all of her required job functions, at a level of proficiency equal to or in excess of what could reasonably be expected."  (*Id.* ¶ 10.)

On or about January 31, 2014, the County distributed 2013 W-2 forms to County employees.  A large number of these W-2 forms contained inaccurate information relating to union dues and retirement contributions.  (*Id.* ¶¶ 12-13.) According to the plaintiff, these inaccuracies resulted largely from the fact that the County relied on a third-party, New World Systems, to convert historical payroll data for the period January 1, 2013, through June 30, 2013, and the third-party failed to convert the data accurately, thus providing the County with inaccurate information used for tax purposes.  (*Id.* ¶14.)

Magni avers that because the County had paid for the services from New World Systems, she was constrained to use its software as part of her job duties, which quickly ran into problems.  She claims that by mid-January, 2014, she discovered that the software was not functioning properly, and that she promptly and repeatedly notified "responsible parties in the County" of this fact, yet her complaints were not promptly or adequately addressed.  (*Id.* ¶¶15-18.)  Instead, it was not until January 27, 2014, that the software problem was resolved, leaving

less than four days in which for the plaintiff to review and process approximately 1,652 W-2s, which had to be finalized by 4:30 p.m. on January 30, 2014.  (*Id.* ¶19.)

Nevertheless, the W-2s were issued on January 31, 2014, and contained inaccuracies, which were promptly discovered by County employees.  (*Id.* ¶22.) On that day, at approximately 5:00 p.m., after word of the inaccuracies had come out, the plaintiff was informed by Andrew Check, the Human Resources Director for Luzerne County, that her employment was being terminated.  (*Id.* ¶ 23.)  The plaintiff alleges that the County Manager, Robert C. Lawton, and the Director of Budget and Financial Services, Brian Swetz, authorized and directed her termination.  (*Id.* ¶ 24.)  Magni alleges that she was given no reason for her firing, and that Mr. Check specifically described the action as being "without cause."  (*Id.* ¶ 25.)  At the time she was let go, Mr. Check told her that the only representation that the County would make to the media in regard to her termination would be to verify her dates of employment, with no suggestion of wrongdoing.  (*Id.* ¶ 26.)

Nevertheless, on February 4, 2014, two local papers, The Citizens' Voice and The Standard Speaker, published an article addressing Magni's termination. The article was written by James Halpin, with The Citizens' Voice headlining it as "Official Fired:  Budget deputy chief erred on county W-2s" and "County finance official fired after erroneous W-2s issued," with The Standard Speaker headlining the article:  "Interim county budget, finance head fired."  (*Id.* ¶ 27.)  The article

4

states that "County officials did not disclose the reason Deputy Chief of Budget and Finance Donna Magni was terminated, but sources say she had a history of making mistakes with the county books and that the tax form error was the last straw," and that "Insiders said that Magni has had 'serious payroll issues' over the years and that the latest problem with income being omitted from the W-2s was merely 'the last straw.'" (*Id.* ¶ 28.)   Magni maintains that these unattributed statements and quotes were entirely untrue, and that the problems with the payroll were the result of the third-party software that the County procured, not an error that Magni made.   The complaint states that Magni presently does not know the source of the allegedly defamatory statements, but suggests that they may have been made by County officials, including Robert C. Lawton, the County Manager and Brian Swetz, the Director of Budget and Financial Services.   (*Id.* ¶¶ 75-76.) Magni avers that her lack of culpability in the payroll mistakes is highlighted by the fact that after she was terminated, the County experienced ongoing and significant errors in its management of payroll and finances.   (*Id.* ¶¶ 29-31.)  Magni further alleges that in 2015, the County issued W-2s for 2014 that also contained inaccuracies, and that additional problems with New World Software have come to light since her departure.   (*Id.* ¶¶ 35-36.)

In addition to her claims against the media defendants, Magni has sued Luzerne County, Lawton, and Swetz.   In Counts 1 and 2, Magni has brought state-

law claims against Lawton and Swetz for wrongful discharge and defamation.  In Count 3, she has sued the County, Lawton and Swetz for First Amendment retaliation.  Finally, in Count 4, Magni alleges procedural due process and "stigma-plus" due process claims against the County defendants.

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires only that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nevertheless, although a complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, to survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level . . . ."  *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  In other words, to satisfy the plausibility standard, a complaint must indicate that the defendant's liability is more than "a sheer possibility."  *Iqbal*, 556 U.S. at 678.  However, "a complaint may not be dismissed merely because it appears unlikely that a plaintiff can prove these facts or will ultimately prevail on the merits."

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), a district court is to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In adjudicating a motion to dismiss, a court generally should restrict its assessment to the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## IV.   DISCUSSION

The County defendants argue that each of the four counts in the plaintiff's complaint should be dismissed. Upon consideration, and for the reasons briefly discussed below, it will be recommended that the plaintiff's wrongful discharge

claim in Count 1 be dismissed, and that her "stigma-plus" due process claim in Count 4 be dismissed, but in all other respects it will be recommended that the motion be denied.

### A.    First Amendment Retaliation

In order to state a claim for First Amendment retaliation, a plaintiff must allege and prove that she engaged in speech activity that is protected by the First Amendment and that the speech was a "substantial or motivating factor" in defendants' allegedly retaliatory action.  *Doughtery v. Sch. Dist. of Phila.*, 772 F.3d 879, 986 (3d Cir. 2014).  If the plaintiff establishes these threshold elements of the claim, the burden shifts to the employer to demonstrate that it would have taken the same action if the speech had not occurred.  *Id.*

In this case, the plaintiff has alleged that in late 2013, approximately three months prior to her termination, she spoke out publicly to notify Luzerne County taxpayers about the County's financial distress, and to alert them to potential waste and wrongdoing regarding mismanagement of public funds.  She alleges that when she spoke out in this way, she did so as a concerned citizen and not as part of her job duties with the County, and did so on her own personal time and not during work hours.   (Doc. 37, Compl., ¶¶ 79-80.)  She alleges that she was terminated for speaking out on important fiscal issues that were matters of public concern.  (*Id.* ¶ 80.)

The defendants offer two arguments in support of their motion to dismiss. First, the defendants argue that they had a legitimate, non-retaliatory reason for firing the plaintiff, namely the botched 2014 W-2 forms that she was responsible for preparing.  It is recommended that this argument is not an appropriate basis for dismissal on the pleadings alone, since even assuming that the errors did occur, the plaintiff has disputed that this is the real reason she was terminated, and presents this question as a factual issue that is central to the claim itself.  Indeed, the plaintiff has alleged that the errors with the 2014 W-2s were not her fault, and that the defendants have used this occurrence as a pretext for terminating her for unlawful reasons.  This defense thus relies upon evidence and matters outside of the complaint, and should not furnish a basis to grant the motion.

The defendants' second argument is that the plaintiff's complaint fails to allege a causal link between her protected conduct and the termination of her employment.  In making this argument, the defendants refer the Court to cases holding generally that where a plaintiff relies exclusively on temporal proximity to establish causation, courts have typically held that such proximity must be quite close.  *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of

causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.")

Although it is clear that in cases where a plaintiff relies *exclusively* on evidence of temporal proximity to establish causality with respect to a retaliation claim the proximity typically must be close, it would be improper to dismiss the plaintiff's claim on this basis at this stage of the litigation. The defendants' mischaracterize the plaintiff's allegations, which do not assert that she is relying *exclusively* on temporal proximity to establish this element of her claim. To the contrary, the plaintiff has included quotes from news reports in February 2014, immediately after her firing, in which at least one elected official said that he "didn't buy that Magni was fired over the W-2s or time clock issues, as he heard" but that her problem was that she "was too honest." (Compl., ¶ 45.) The same council member is alleged to have told news outlets that Magni's public commentary regarding fiscal mismanagement and other problems in October 2013 "was her kiss of death" and that "she never made a report after that because she told the truth, and she wasn't supposed to." (*Id.* ¶ 46.)

Thus, Magni has not exclusively argued that she is relying on temporal proximity to prove her claim, and has included some allegations to suggest that the stated reasons given for her termination were pretextual. The Court should, therefore, decline the defendants' efforts to have this claim dismissed solely

because three months passed between Magni's public comments and her firing, since the cases relied upon do not hold that the mere passage of time in all cases forecloses a retaliation claim, and because Magni is not predicating causation on temporal proximity alone, but alleges facts which, if proven, may support an inference of a retaliatory motive..

### B.    14th Amendment Due Process Claims

In Count 4, Magni alleges that she was terminated without due process of law and that in terminating her employment, the defendants defamed her, thereby violating her liberty interest in her reputation.  These claims, brought together in Count 4, are in fact legally distinct.  First, with respect to her procedural due process claim, Magni alleges that she was deprived of a legally protected property interest in her continued employment when she was terminated for cause without sufficient procedural due process.  Second, with respect to her so-called "stigma-plus" due process claim, Magni alleges that the defendants' defamatory statements about her, coupled with their firing of her, violated her liberty interest in her reputation that is also protected by the Due Process Clause of the Fourteenth Amendment.

The defendants have moved to dismiss each of these due process claims, arguing first that Magni had no protectable interest in her continued employment because as a matter of law she was an at-will employee.  The defendants also argue

that the plaintiff's stigma-plus claim fails as a matter of law because she has not attributed any sufficiently stigmatizing statement to them to support this claim.

## 1.     Procedural Due Process

To state a procedural due process claim under the Fourteenth Amendment for the deprivation of a legally protected property interest, a plaintiff must allege (1) that she was deprived of a property interest and (2) that the procedures afforded to her incident to that deprivation failed to comport with the requirements of due process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Whether a person has a legitimate entitlement to continued employment is a question that is answered by reference to state law. *Hill*, 455 F.3d at 234.  Sometimes this issue is answered simply by reference to statute and public documents, as was the case in *Hill* where the Third Circuit concluded that the plaintiff, a Borough Manager, was an at-will employee because a Pennsylvania statute said as much, and because the Borough Code also made clear that the Manager was at-will. *Id.* at 234 n.11.

The defendants urge the Court to dismiss Magni's procedural due process claim by arguing that the Court should find, as a matter of law and based upon its

own review of the County's Charter and Personnel Code, that Magni had no protectable interest in her continued employment since she was an at-will, exempt employee. (Doc. 42, Exs. A and B.) However, review of these documents, and in particular the limited provisions to which the defendants have directed the Court's attention, provide inadequate support for the Court to make this judgment as a matter of law. Unlike in *Hill*, where state law and the Borough Code specifically addressed the position of Borough Manager and defined the position as at-will, the defendants have not referred the Court to any statute providing the same definition for a "Deputy Chief of Budget and Finance." Instead, the defendants have attached copies of the County Charter and Personnel Code, with some limited citations to provisions therein, and have argued that the Court should interpret these provisions as making clear as a matter of law that the Deputy Chief of Budget and Finance is an exempt position that served "at the pleasure of the person authorized to make the appointment[ ]." (Doc. 42, Ex. A, Luzerne County Charter at § 7.04.)

Assuming that it is appropriate for the Court to rely exclusively on these documents to make a determination of whether the plaintiff is an "at-will" exempt employee, the Court is constrained to recommend that the motion to dismiss the procedural due process claim be denied at this time. The defendants place great emphasis on the fact that under the Charter, the "exempt service shall consist of . . . certain policy-making and other positions filled outside the career service

13

provisions as defined in the Personnel Code." *Id.*   Yet, review of the Personnel Code reveals that Magni's position is not specifically defined as exempt; instead, it appears that the defendants are arguing that the Court should construe the position as a policy-making one, and, therefore, conclude as a matter of law that it is exempt.   As best the Court can tell, the position is not even mentioned in the Code or in the Charter.   Although the Court has considerable doubt that the a "Chief Deputy of Budget and Finance" could be anything other than exempt or at-will, the defendants have not provided a sufficiently conclusive showing that the plaintiff's position was at-will under the terms of the documents that they are relying upon in support of their argument.   Further development of this issue entails a factual foray beyond the four corners of the complaint itself, something we may not undertake at this stage of the litigation. Accordingly, out of an abundance of caution, and because this is the only basis being offered in support of the motion to dismiss the procedural due process claim, it will be recommended that the motion to dismiss this portion of Count 4 be denied, without prejudice to the defendants renewing this argument with additional support through a motion for summary judgment if warranted.

### 2.    Stigma-Plus

The Supreme Court has long held that an individual has a protectable interest in her reputation. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); *see*

*also Hill*, 455 F.3d at 235.  To make out a claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to [her] reputation plus deprivation of some additional right or interest."  *Hill*, 455 F.3d at 236 (emphasis removed) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  Under the "stigma-plus" test, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'  When such a deprivation occurs, the employee is entitled to a name-clearing hearing."  *Id.*  In order to satisfy the "stigma" prong of the claim, a plaintiff must demonstrate (1) that the stigmatizing statement was made publically, and (2) that the statement was substantially and materially false."  *Id.*  The materially false statement must infringe upon the "reputation, honor, or integrity" of the employee.  *Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. Mar. 21, 2012) (quoting *Ersek v. Springfield*, 102 F.3d 79, 73-84 (3d Cir. 1996)).

The moving defendants argue that the stigma-plus claim fails both prongs, since the plaintiff has not even alleged that any of them made the allegedly defamatory or stigmatizing statements, and because even if they had made the statements, they merely related to job performance or competency, which courts have held do not satisfy the stigma requirement of a due process deprivation of liberty interest claim.

It is true that the plaintiff acknowledges that she does not know which employee made the allegedly defamatory statements to the news media. The plaintiff has in fact admitted that pending further discovery, she "does not know the identity of the so-called 'sources' and 'insiders,' or, for that matter, whether any statements from them were accurately quoted." (Doc. 37, Compl., ¶ 75.) Nevertheless, Magni has alleged on information and belief that the source "was likely Lawton and/or Swetz in view of their positions and perceived involvement in the termination." (*Id.* ¶ 76.) If this were the only challenge to the stigma-plus claim, it would be recommended that the claim go forward. However, the claim fails because the statements that Lawton and Swetz may have made to the media regarding Magni's termination were not sufficiently stigmatizing to support this claim.

Courts have required that the statements upon which a stigma-plus claim is predicated be sufficiently stigmatizing so that they impair the reputation, honor, or integrity of the employee. *See Brown*, 470 F. App'x at 91. "'No liberty interest of constitutional significance is implicated when 'the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" *Id.* (quoting *Mercer v. Cedar Rapids*, 308 F.3d 840, 845-46 (8th Cir. 2002)). Thus, in *Brown*, the Court found that the publication of an employer's comments that the plaintiff violated the county code did not add to the stigma that

the plaintiff brought on himself through his own conduct. *Id.* Likewise, in *Kohn v. School District of Harrisburg*, this Court found that accusations of poor performance and questioning of competency did not satisfy the stigma prong. 817 F. Supp. 2d 487, 498-99 (M.D. Pa. 2011). Other decisions are in accord. *See, e.g, Young v. Kisenwether*, 902 F. Supp. 2d 548, 558-59 (M.D. Pa. 2012); *Fox v. Cheltenham Twp. Auth.*, Civ. A. No. 12-716, 2012 U.S. Dist. LEXIS 83903, *11 (E.D. Pa. June 18, 2012); *Chinoy v. Pennsylvania State Univ.*, No. 11-1263, 2012 U.S. Dist. LEXIS 29398, *13-14 (M.D. Pa. Mar. 6, 2012).

The complaint contains few, spare allegations about what was published in the press after Magni was let go. Magni alleges that the article in the Citizens' Voice stated that "County officials did not disclose the reason Deputy Chief of Budget and Finance Donna Magni was terminated" but also reported that sources said she "had a history of making mistakes with the county books" and had "serious payroll issues," with the "last straw" being the income that was omitted from the 2014 W-2s. These unattributed statements, which comment in limited fashion regarding Magni's job performance, appear to be the entirety of the statements Magni claims were stigmatizing, and which she speculates may have been made by Lawton or Swetz. In light of the case law in this field holding that statements that are critical of an employee's job performance and competence are

insufficient to support a stigma-plus claim, it will be recommended that this aspect of Count 4 be dismissed.

### C.     Wrongful Discharge

In Count 1, the plaintiff brings a claim for wrongful discharge against the County defendants, claiming that she was fired because she made some public comments critical of the County's fiscal management and disagreed openly with Lawton over a proposal to unify employee pay periods, which the plaintiff believed might violated the Fair Labor Standards Act.

In Pennsylvania, the general rule is that no common-law cause of action exists against an employer for termination of an at-will employee relationship. *Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555, 562 (2009). "Exceptions to the rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1989). To determine Pennsylvania public policy, courts look to the Commonwealth's "Constitution, court decisions, and statutes." *Weaver*, 975 A.2d at 563. The Third Circuit has cautioned that "Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." *Spyridakis v. Riesling Group, Inc.*, 398 F. App'x 793,

18

798-99 (3d Cir. 2010) (citing *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003)).  The Third Circuit further explained that

> although the parameters of the narrow public policy exception have not been precisely defined, there appear to be "three limited circumstances in which public policy will trump employment at-will."  . . . [W]e described those circumstances as follows:  "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute."

*Id.*

The County defendants move to dismiss the wrongful discharge claim, arguing that Magni has not identified any clear mandate of public policy articulated in Pennsylvania's Constitution, statutes, regulations, or judicial opinions that are applicable to the facts alleged in this case.  The plaintiff, in response, attempts to predicate her claim on the defendants' alleged violations of Pennsylvania's Whistleblower Law, 43 P.S. § 1423, while at the same time admitting that she never brought a timely claim under this state law, and that she cannot bring any such claim at this point.  In so doing the plaintiff is effectively seeking to take advantage of the Whistleblower Law, despite never having brought a claim under this law, in effect attempting an end-run around the time limitations for such a claim.  She has, furthermore, provided no legal support for the proposition that an alleged violation of the Whistleblower Law, even if untimely,

19

can support a separate and parallel claim for wrongful discharge under state law, and the Court has found none.

Magni also tries to support her wrongful discharge claim on her allegation that she openly disagreed with Lawton about a plan he had to address an issue the County was having with County payroll, which Magni allegedly believed would have violated federal law.   Yet, despite alleging that Lawton had directed her to comply with his new plan to unify pay periods even if it was in violation of the law, the issue and dispute appears to have evaporated since Magni alleges that "the subject was more or less dropped by [Lawton], with his plan never implemented to this date."   (Doc. 37, Compl., ¶ 56.)   Thus, the complaint does not even support Magni's suggestion that she was terminated for refusing to violate the law, since the complaint states that the allegedly violative payroll plan was abandoned and never taken up again.[1]

---

[1]   Furthermore, the plaintiff's alleged disagreement with Lawton over his payroll plan and its potential conflict with federal law is insufficient to support a wrongful discharge claim under Pennsylvania law.   For example, in *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000), the Pennsylvania Supreme Court affirmed a lower court order dismissing a claim of wrongful discharge brought by a former employee who had complained about violations of the federal Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651 et seq. The court held that "in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own interest.   The plaintiff in some way must allege that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee.   Public policy of the Commonwealth must be just that, the policy of this Commonwealth."   *Id.* at 290.   Here, the plaintiff has suggested no more than that she expressed her concern that a financial plan that Lawton had proposed, but which was never implemented, might have violated the FLSA.   She does not explain how the FLSA and its animating purpose reflect the policy of the Commonwealth of Pennsylvania, and she has not cited to any authority for that proposition.   In

Given the absence of factual allegations that could support a wrongful discharge claim, mindful that courts should be very cautious before allowing exclusions to the general rule in Pennsylvania regarding the at-will employment doctrine, and finding that Magni has not articulated a claim under any of the three narrow circumstances where courts will find a public policy prohibits an at-will employee's discharge, it will be recommended that the County defendants' motion to dismiss the state-law wrongful discharge claim be granted.

### D.    Defamation

Lastly, the County defendants have moved to dismiss Magni's defamation claim brought against Lawton and Swetz.  As noted earlier, although Magni admits she does not yet know the actual sources of the allegedly defamatory material published in the local paper, she believes and avers that it was either Lawton or Swetz given their involvement in her termination.  (Doc. 37, Compl., ¶ 76.)  The defendants argue that this speculative allegation should be deemed insufficient. Additionally, they argue that this claim should be dismissed because the claims are barred by the Pennsylvania Tort Claims Act.  Finally, the defendants argue that Lawton and Swetz enjoy absolute high public immunity against this tort claim under Pennsylvania law.   The Court has previously found that Magni has

---

any event, however, the Court cannot conceive of how this alleged disagreement could support a wrongful discharge claim in this particular case where the allegedly offensive policy was "more or less dropped" with the "plan never implemented."  (Doc. 37, Compl., ¶ 56.)

adequately that Lawton or Swetz were the likely source of the quotes and information featured in the story, and will, therefore, proceed to consider the defendants' secondary arguments regarding their immunity from suit.

The Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. §§ 8541 et seq., provides a comprehensive statutory framework for analyzing official immunity defenses asserted by local governmental agencies and their employees.  In general, the Act provides that local agencies and their employees are immune from suit.  42  Pa. Cons. Stat. Ann. §§ 8541, 8545.  The Act specifies eight categories of negligent acts where agencies and employees are not immune: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.  42 Pa. Cons. Stat. Ann. § 8542(b).  The plaintiff's defamation claim does not fall within any of these eight categories, and thus neither Lawton nor Swetz would enjoy immunity from this claim if it were grounded in allegations of negligence.  *Weinstein v. Bullick*, 827 F. Supp. 1193, 1205-06 (E.D. Pa. 1993).  However, since defamation is an intentional tort, *Wilson v. Marrow*, 917 A.2d 357, 364-65 (Pa. Commw. Ct. 2007), these general categories of immunity from negligence have no application to the plaintiff's defamation claim.  *Id.*

The PSTCA does not grant the same broad immunity from suit for intentional torts. Instead, section 8550 of the Act provides:

> In any action against a local agency or employee thereof on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. Cons. Stat. Ann. § 8550.   For purposes of section 8550, "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." *R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Retardation*, 936 A.2d 1218, 1230 (Pa. Commw. Ct. 2007) (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994). Willful misconduct means that the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Id.* (citing *Evans v. Phila. Transp. Co.*, 418 Pa. 567, 212 A.2d 440, 443 (1965)).

Lawton and Swetz reiterate their view that the plaintiff's allegations of defamation against them lack specificity and are speculative, since she admittedly does not know the identity of the source quoted or relied on in the newspaper story. They rely on this argument to contend further that because the plaintiff cannot be sure it was either of these defendants made the statements, she cannot adequately

23

allege that either of them acted willfully.   Upon consideration, the Court finds this argument on a motion to dismiss unpersuasive, since the plaintiff has, in fact, alleged that either Lawton or Swetz was the source, (Doc. 37, Compl., ¶37.), and that they made the statements with intent to injure her reputation.   It will be recommended that the Court decline to find on the basis of the complaint itself that either Lawton or Swetz is entitled to immunity under the PSTCA, without prejudice to this defense being raised again through a motion for summary judgment if warranted.

Lawton and Swetz also argue that they are entitled to high public official immunity from the defamation claim.   Pennsylvania's doctrine of absolute privilege for high public officials "is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, his jurisdiction." *Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006) (quoting *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952)).   "The privilege is not for the benefit of the official, but to protect " 'society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.' " *Id.* (quoting *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (1996)).

24

Determining whether a particular public officer is protected by absolute privilege depends on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions. *Montgomery v. City of Phila.*, 392 Pa. 178, 140 A.2d 100, 105 (1958).

In the absence of statutory classifications, "the parameters of establishing 'high public official' status [is] delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line "of demarcation, if any there be, which separates offices which are protected by absolute privilege from those which are not." *McKibben v. Schmotzer*, 700 A.2d 484, 489 (Pa. Commw. Ct. 1997) (citing *Montgomery*, 140 A.2d at 105). In addition, courts generally recognize two factors that are relevant to determining whether a high public official acted within the scope of his duties at the time of the allegedly defamatory statements: (1) the formality of the forum in which the alleged defamation occurred; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages. *Id.* (citing *Hall v. Kiger*, 795 A.2d 497, 501 (Pa. Commw. Ct. 2002)).

The defendants ask the Court to assume that both Lawton and Swetz are the types of policy-making officials entitled to invoke high public official immunity, and they also ask the Court to assume that the statements they are loosely alleged to have made to media outlets were made in the scope of their official duties. The

defendants' have not supported these assumptions with reference to controlling case law that would compel the Court to find, at this juncture, that either of these defendants is absolutely immune from the plaintiff's defamation claim on the basis of both their station in county government, and with respect to the statements that the plaintiff believes one of them may have made after she was terminated.  It will, therefore, be recommended that the Court decline to find at this time that either Lawton or Swetz qualifies for absolute immunity from the defamation claim, pending further development of the record or a motion for summary judgment.

## V.    <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, it is recommended that the County defendants' motion to dismiss the plaintiff's complaint (Doc. 41.) be GRANTED with respect to the plaintiff's wrongful discharge claim in Count 1 and her stigma-plus claim in Count 4.  In all other respects, it is that the motion be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: January 6, 2017