# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA MAGNI, | : | |
| | : | |
| Plaintiff, | : | 3:15-CV-1177 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| COUNTY OF LUZERNE, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Donna Magni is the former Deputy Director of the Budget and Finance Department of Defendant Luzerne County ("County"). She has brought this employment action against the County, the County's former Manager, Robert Lawton, and the Director of the Budget and Finance Department, Brian Swetz. Presently before the Court is a Report and Recommendation ("R&R") by Magistrate Judge Carlson in which he recommends Defendants' Motion for Summary Judgment be granted. Doc. 99. As the R&R noted, the only remaining claims are Plaintiff's First Amendment retaliation claim for statements she made during a County council meeting, and a due process claim concerning whether the County's Home Rule Charter and Personnel Code entitled Plaintiff to a property interest in her continued employment. *See* R&R *generally*. Plaintiff has filed Objections to the R&R, to which Defendants filed a response, and Plaintiff filed a reply. Docs. 100, 104, 105.

1

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Plaintiff objects to the R&R's recommendation to dismiss both remaining claims. Plaintiff argues that (1) the retaliation claim should survive because there is an issue of fact as to whether Plaintiff's speech in a County council meeting was made outside her ordinary job duties as the then-Interim Chief of Budget and Financial Services of Luzerne County; and (2) that the due process claim should survive because the Luzerne County Home Rule Charter and Personnel Code established a property interest in Plaintiff's employment and, contrary to the R&R's conclusions, qualified immunity should not apply to the Defendants. *See* Doc. 101 *generally*.

### A. Plaintiff's Objections as to the First Amendment Retaliation Claim Will Be Overruled.

With respect to the retaliation claim, the Court will overrule Plaintiff's Objections because the R&R laid out the ample evidence, taken from Plaintiff's own testimony,

2

indicating that she was not engaging in protected conduct when she spoke at the County council meeting. As the R&R correctly noted, "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement [the employee] made." R&R at 12-13 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir 2006)). Here, the Plaintiff's allegedly protected activity were statements she made during a County Council meeting regarding the County's budget shortfall. The R&R properly discounted Plaintiff's unilateral declarations that as the then-Interim Director of Budget and Financial Services for Luzerne County, her duties "did not include attendance at county council meetings...giving reports or statements to city council, whether at meetings or otherwise... giving reports or statements to the general public, whether at meetings or otherwise... attending the subject October 2013 county council meeting...[or] giving any report or statement at the subject October 2013 county council meeting..." R&R at 16 (citing Doc. 95, Plaintiff's Affidavit). The R&R pointed out that these declarations, which were submitted contemporaneously with Plaintiff's opposition to the motion for summary judgment, are contradicted by Plaintiff's prior sworn deposition testimony. Plaintiff's own testimony indicates that she did not attend the October 2013 council meeting as a private citizen wishing to speak on a matter of public concern,

but rather, only attended the meeting after her supervisor, Robert Lawton, stated that he wished for her to attend:

> Q: And why did you go to [the October 8, 2013] meeting to speak on the issue of the shortfall of $15 million?
>
> A. I was the interim director and I said to Mr. Lawton, "Do you want me at the meeting?" He said "Yeah. It would be a good idea if you went." Didn't specifically say, "You would be speaking." Didn't specifically say that I wouldn't. *So I went up as the interim director of budget and finance.*

*Id.* at 17 (citing Doc. 90-4, Plaintiff Dep. at 27:16-25) (emphasis in original). Further, Plaintiff testified that she prepared for the meeting beforehand "in case … [she] would speak." R&R at 18 (citing Doc. 90-4). At the meeting, her supervisor asked her to offer a response after the County's former Controller questioned the County's cash position. *Id.* Plaintiff testified that she "already had [her] notes about what we needed for cash requirements going through to the end of the year" when she spoke, and that she started by "rattling off just we have this much money coming in for real estate taxes. We owe this much for payroll. We owe this much for debt service. Just various things." *Id.* (citing Doc. 90-4). She further testified that the council questioned her about various budget expenses and revenue for the County, which she answered, and they discussed possible solutions to the budget shortfalls. *Id.* at 19-20. Thus, Plaintiff's own testimony reveals that her statements during the October 2013 County council meeting (1) were made in response to County council members' concerns about budgetary matters, (2) that she prepared for the meeting beforehand by drawing on knowledge she acquired in her role as the Interim Director of

4

Budget and Finance, (3) that she only attended the meeting after her supervisor indicated that she should do so, and (4) that she viewed her attendance at the meeting to be within her role as the Interim Director of the Budget & Finance Office. *See Kimmett v. Corbett*, 554 F. App'x 106, 111 (3d Cir. 2014) (noting that determining the scope of an employee's duties is a "practical" inquiry, in which the court may examine: "(1) whether the employee's speech relates to 'special knowledge' or 'experience' acquired through his job; (2) whether the employee raises complaints or concerns about issues relating to his job duties 'up the chain of command' at his workplace; (3) whether the speech fell within the employee's designated responsibilities; and (4) whether the employee's speech is in furtherance of his designated duties, even if the speech at issue is not part of them.") (internal citations omitted). Accordingly, the R&R properly found that Plaintiff's statements during the meeting "were not undertaken as a private citizen but as a County official about matters that fell within her bailiwick at the Interim Director [of the Budget & Finance Office]." *Id.* at 23. Plaintiff's Objection with respect to the retaliation claim is overruled.

### B. Plaintiff's Objections as to the Due Process Claim Will Be Sustained.

The Court will sustain Plaintiff's Objections as to the R&R's analysis of the due process claim. First, the R&R found that the Luzerne County Home Rule Charter does not expressly provide that employees could only be terminated by just cause. R&R at 35. Second, the R&R noted that while the Home Rule Charter incorporated by reference the Personnel Code, which provides that certain employees may only be terminated by just

5

cause, there existed case law for the proposition "that where a personnel code alone purports to alter the at-will employment relationship, it is of no legal effect." *Id.* at 35-36. The R&R went on to find that because there arguably "ambiguity in this area of the law, and in the scope of a Home Rule municipality's authority to alter the at-will employment relationship with its employees, we find that this is a textbook case where the defendants should be granted qualified immunity on Ms. Magni's due process claim." *Id.* at 36. In other words, the R&R found that "even if the defendants were mistaken in believing that they could terminate the plaintiff's employment for any reason or no reason, the numerous state and federal decisions cited above would provide a reasonable municipal manager or supervisor grounds to believe that they acted lawfully in believing that Ms. Magni's employment remained at will." *Id.*

The Court disagrees with the R&R's analysis on the due process claim. "To have a property interest in a job ... a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question answered by state law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). In Pennsylvania, an employee is employed at-will and can be terminated without cause unless there is a contract or legislation to the contrary. *See Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). "In order to rebut the presumption of at-will

6

employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997). When it comes to public employees, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority for doing so." *Elmore*, 399 F.3d at 282.

Here, Plaintiff argued that she was not an at-will employee because, under the terms of the Luzerne County Home Rule Charter and Personnel Code, she could only be terminated for "just cause". Plaintiff argued that under *Mancini v. Northampton Cty.*, 836 F.3d 308 (3d Cir. 2016), Pennsylvania's presumption of at-will employment for public employees can be overcome by a Home Rule Charter. Doc. 93 at 16. Specifically, *Mancini* held that an employee had a property interest in her employment when the County's Home Rule Charter provided "that no member of the career service shall be 'dismissed ... except for just cause.'" *Id.* at 315. The R&R disagreed with Plaintiff and distinguished *Mancini*, reasoning that "unlike in *Mancini* where the Home Rule charter expressly provided that employees could only be terminated for just cause, the Luzerne County Home Rule Charter does not." R&R at 35. Instead, Luzerne County's Charter refers to a "Personnel Code" that more specifically governs employment issues. *Id.* The R&R then noted that it "cannot ignore the line of Pennsylvania cases…which uniformly hold that a municipality may not

alter the presumed at-will status of its employees through language used in a personnel code, absent an express grant of statutory authority from the General Assembly." *Id.* Accordingly, the R&R found that *Mancini* does not apply to Plaintiff's employment in the instant case.

The Court does not agree that the application of *Mancini* should be read so narrowly. It is true that unlike the Home Rule Charter at issue, the charter in *Mancini* expressly included language of a "for cause" employment provision. However, several considerations militate towards a broader application of *Mancini* than to only charters that explicitly contain "for cause" language. First, the *Mancini* Court did not only consider the county charter in reaching its holding that the plaintiff was entitled to due process before her termination. Rather, it held that "[t]he Northampton Home Rule Charter, Grievance Policy, *and* Layoff Policy entitled Mancini to a hearing before the Personnel Appeals Board to challenge the legitimacy of her discharge, despite the purported reorganization." *Mancini*, 836 F.3d at 319 (emphasis added). In other words, the Court not only considered the county's Home Rule Charter, but also took note of its "Layoff Policy," which gave retention priority to career service employees over part-time employees, and its "Employee Policy," which stated that "career service employees have the right to appeal 'a suspension or discharge from employment,' or to challenge 'an alleged violation of the County's Home Rule Charter, Administrative Code...or departmental procedure relating to terms and conditions of

employment." *Id.* at 319. The Court then rejected the defendant's argument that such policies do not confer a property interest on the plaintiff:

> Northampton boldly asserts that its Layoff Policy 'does not offer a right to due process in response to a legitimate reorganization.' The Layoff Policy, however, does not provide the escape hatch Northampton seeks. It, too, entitled Mancini to due process...By its own terms, the policy applies 'to all County employees.' The Layoff Policy permits employees to appeal a layoff to the Personnel Appeals Board....If, as Northampton maintains, Mancini was dismissed pursuant to a layoff, under the Layoff Policy she was entitled to a hearing on her claims. *We reject Northampton's selective reading of its own laws.* We hold instead that those laws required the County to provide Mancini with a pre-termination hearing.

*Id.*, 319–20 (emphasis added). Thus, in holding that the plaintiff had a property interest in her employment, the Third Circuit contemplated not only the county's Charter, but related employment policies as well.

Second, the *Mancini* Court never suggested that the terms of the "for cause" provision must be expressly stated in the charter itself in order to be effectuated. Here, the Luzerne County Home Rule Charter expressly adopts the Personnel Code:

> **Section 7.01—Personnel Code.** There shall be a Personnel Code that shall establish and maintain the means to recruit, select, develop, and maintain a qualified, ethical, efficient, effective, productive, and responsive work force in order to best meet the needs of Luzerne County.
>
> **Section 7.03—Scope of Personnel Code.** Except as may otherwise be provided for in this Charter or applicable law, the Personnel Code shall apply to every County division, department, bureau, office, agency, board, commission, and other administrative unit.... Consistent with all applicable contracts and laws, the Personnel Code shall provide, but not be limited to, policies, procedures, rules, and regulations governing employee...discipline, force reduction, and discharge....

> **Section 7.04 – Career Service, Exempt Service, and State Civil Service.**
> Each elective County official and employee of Luzerne County shall be a member of the career service, exempt service, or part of the state civil service system.
>> A. The Personnel Code shall define the County positions to be included in the career service....
>> B. The exempt service shall consist of all elective County officials and certain policy-making and other positions filled outside the career service provisions as defined in the Personnel Code. Except for elective officials and others serving fixed terms, those appointed to these positions shall serve at the pleasure of the person authorized to make the appointments.

R&R at 24-26 (citing the Luzerne County Home Rule Charter § 7.04). Thus, the Charter requires the Personnel Code to set forth the definitions and terms of employment for County employees, and the Code did so. In particular, the Personnel Code defined "career service" as "a permanent service...compris[ing] all positions in the County Government now existing...with the exception of those persons listed in [the "Exempt Service" section]." *Id.* at 26 (citing Luzerne County Personnel Code § 1002.01). The Code defined "exempt service" as "positions held by all elected officials, the County Manager, Chief Public Defender, Chief County Solicitor, Division Heads, Clerk of Council and other positions as promulgated under the Home Rule Charter." *Id.* The Personnel Code further provides that "[e]xcept as the Charter provides, any dismissal, demotion to a lower-paid position, or suspension of any nonprobationary employee without pay shall be for just cause only." *Id.* (citing Luzerne County Personnel Code § 1005.02). Thus, under the Personnel Code, it appears that those employees who are hired in career service positions can only be terminated for just cause, while, pursuant to the Home Rule Charter, those who

10

hold exempt service positions "serve at the pleasure of the person authorized to make the appointments." R&R at 26.

As this Court recently found in *Javitz v. Luzerne Cty.*, 2018 WL 1545589 (M.D. Pa. Mar. 29, 2018), "[i]n addition to being somewhat circular, these provisions provide a broad definition of the positions that may be included as part of the exempt service." *Id.* at *5. "Indeed, the use of the term 'other positions filled outside of the career service provisions,' as used in the Charter's definition of 'exempt service,' is certainly broad enough to include the position of Director of Human Resources." *Id.* Likewise, here, there is no indication in the Home Rule Charter or Personnel Code whether Plaintiff, the Deputy Director of Budget and Financial Services, was an exempt service employee or a career service employee. While the County repeatedly asserts that Plaintiff's job "is a policy-making position under the Charter and qualifies as an 'exempt service' position," doc. 104 at 27, the Court cannot simply take the County's assertion to be true at the summary judgment stage. The determination of whether Plaintiff had sufficient policy-making authority to qualify her as an "exempt service" employee is an issue of fact, which must be resolved by a jury.

Defendants would have the Court sidestep these factual issues and instead find the Charter's explicit incorporation of the Personnel Code to be legally void. Doc. 104 at 22-24 (arguing that the Personnel Code does not alter Plaintiff's at-will status and citing case law that purportedly hold that employee personnel policies cannot create a property interest in continued employment). However, the bulk of cases cited by the Defendants concerns

11

personnel *manuals* or *handbooks*, not a County legislative document. *See, e.g., Short v. Borough of Lawrenceville*, 696 A.2d 1158, 1159 (Pa. 1997) ("an employee handbook or personnel manual issued by a Commonwealth agency is not a legislative action in itself and cannot be considered a contract guaranteeing a property right in employment"); *Raimondi v. Wyoming Cty.*, 2015 WL 1729377, at *5 (M.D. Pa. Apr. 15, 2015) (granting motion to dismiss on the Section 1983 claim and rejecting Plaintiff's argument that she should be allowed to conduct discovery into whether her "employment handbook" may establish "that she was not an at-will employee, but rather could be fired for 'just cause'"); *Frederick v. Barbush*, 2014 WL 840390, at *7 (M.D. Pa. Mar. 4, 2014) (finding no property interest because the "[Employee] Manual is not entitled to the force and effect of law"). Significantly, in *Frederick*, "[u]pon receipt of the Manual, Plaintiffs each signed an acknowledgment, stating that: [n]othing contained in the Manual ... should be interpreted or construed as conferring employment for a specific term or as an employment contract. I further understand and agree that my employment is terminable 'at-will'..." *Id.* at *3. Here, the record does not contain any similar acknowledgement (or indeed, any employment offer document relating to the Plaintiff).

In this case, the "just cause" provision is not found in an internal manual or handbook, but in a County Code explicitly adopted by the Home Rule Charter. Like the plaintiff in *Mancini*, Plaintiff in this case does not exclusively rely on language from an employee handbook, but rather, on language found in the Home Rule Charter, which

explicitly incorporates the Personnel Code and directs employees to the Code for their employment terms and conditions. Thus, the cases cited by Defendants, which involve plaintiffs asserting rights conferred solely by a personnel manual or handbook, are inapplicable. Furthermore, as discussed above, *Mancini* not only considered the County's Charter in determining whether a property interest existed, but also considered the County's Employment and Layoff policies, and it found that those documents taken together conferred a property interest in its employees. Notably, the decision did not impose a requirement that the Charter itself must *explicitly* include the terms of a "just cause" provision. Moreover, the cases relied upon by the Defendants precede *Mancini*. In light of the Third Circuit's recent elucidation on this issue, the Court cannot countenance the argument that Defendants' own Personnel Code should be disregarded as having "no legal effect."[1] Doc. 104 at 26.

Although not dispositive in this case given that *Mancini* endorsed looking to evidence beyond the County Charter, the Court notes that the Personnel Code appears to be a document independently imbued with legislative authority. By the County's own admission, the "Personnel Code was adopted on April 10, 2012 and subsequently amended on May 28, 2013," presumably referring to the County's legislative ratification of the Personnel Code. Doc. 91 ¶ 4 (County's statement of facts in support of its motion for summary judgment).

---

[1] While this fact has no bearing on the Court's ultimate rulings, it is noteworthy that in a recent case before this Court, Luzerne County did not challenge—and in fact appeared to endorse—the validity of the Personnel Code. *See Javitz*, 2018 WL 1545589, at *6-7 (in which Luzerne County did not challenge the validity of the Personnel Code, but instead argued that Plaintiff's Offer of Employment established that she was an at-will employee).

13

Thus, the Personnel Code appears to be a legislatively enacted document that may independently create a property interest in Plaintiff's continued employment. *See, e.g., Javitz*, 2018 WL 1545589, at *3 (noting that legislation can overcome the presumption of at-will employment in Pennsylvania) (citing *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995)). In sum, the Plaintiff here does not rely on language found solely in an internal policy or handbook, but rather, on language found in the Home Rule Charter, which incorporates by reference the Personnel Code, which may itself be a legislatively enacted document.

The R&R, adopting Defendants' arguments that would undermine their own Home Rule Charter and Personnel Code, found that there was at least "ambiguity in this area of the law, and in the scope of a Home Rule municipality's authority to alter the at-will employment relationship with its employees," and concluded that "this is a textbook case where the defendants should be granted qualified immunity on Ms. Magni's due process claim." R&R at 36. However, there is no legal ambiguity as to a County's ability to alter the at-will employment of its employees through legislation or contract. *See Mancini*, 836 F.3d at 315 (holding that a County's home rule charter and other documents may confer a cognizable property interest in the employee); *Elmore v. Cleary*, 2004 WL 3217857, at *3 (M.D. Pa. Mar. 9, 2004) (noting that the "general rule" of public employees' at-will employment may "be modified by statute, regulation, legislative directive, or agreement between the government employer and employee"), *aff'd*, 399 F.3d 279 (3d Cir. 2005);

*Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 378, 395 (M.D. Pa. 1995) (noting that an employee may claim a property interest in their employment if they "can point to a state statute, regulation, or agreement between the employer and employee establishing such a secured right."), *aff'd*, 91 F.3d 122 (3d Cir. 1996). The issue in this case is not one of *legal* uncertainty, but a dispute of a *factual* nature as to whether Plaintiff is a career service employee who may be terminated only for cause, or an exempt service employee who remained at-will.

In other words, there can be no doubt that a property interest created by a municipal employer through a contract or legislation is a constitutionally protected right, which may not be violated without due process. Thus, Defendants cannot be granted qualified immunity on the grounds that they were "reasonable" in flouting their own Personnel Code by arguing that the Code has no legal effect. Were the Court to rule otherwise, public employers would have the perverse incentive of setting up a system where their own documents purport to afford employees protection from termination without cause, only to subsequently claim that certain documents are legally void when plaintiffs bring a due process claim against them. *Cf. Mancini*, 836 F.3d at 320 ("If, as Northampton maintains, Mancini was dismissed pursuant to a layoff, under the Layoff Policy she was entitled to a hearing on her claims. *We reject Northampton's selective reading of its own laws.* We hold instead that those laws required the County to provide Mancini with a pretermination hearing.") (emphasis added). Defendants cannot hide behind the shield of qualified immunity by virtue of ambiguities of

their own making. The Charter and the Personnel Code together create a cognizable property interest in the County's "career service" employees. Whether Plaintiff's employment is properly viewed as "career service" or "exempt service", however, is an issue for trial. Thus, the Court will overrule the R&R's recommendation to dismiss the due process claim on grounds of qualified immunity.[2]

### III. CONCLUSION

For the reasons outlined above, the Court will adopt the R&R in part and overrule it in part. A separate Order shall follow.

Robert D. Mariani
United States District Judge

---

[2] Plaintiff's Objections also point out that the R&R appeared to have dismissed the due process claim against *all* defendants on the basis of qualified immunity, which was error because the County, unlike the individual defendants, cannot be granted qualified immunity. Because the Court finds that qualified immunity does not apply in this case given that the constitutional right in question is clearly established, the issue is moot. However, for purposes of clarity, the Court notes that qualified immunity could have only applied to the individual defendants. This is consistent with the parties' submissions to the Court — Defendant's motion for summary judgment only sought dismissal of the due process claim on the grounds of qualified immunity on behalf of the individual defendants, and Defendants conceded in their response to Plaintiff's Objections to the R&R that "qualified immunity is 'a defense afforded only to individuals — not municipalities or municipal agencies.'" Doc. 104 at 29 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 556, n. 10, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).